

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2021-03714  SECTION  DIVISION

SECTION 14

F

WILLARD MASTERS III

VERSUS

TAYLOR SEIDENBACH, INC., ET AL

FILED: _____          _____
                                          DEPUTY CLERK

## PETITION FOR DAMAGES

TO THE HONORABLE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS STATE OF LOUISIANA, AND THE JUDGES THEREOF:

1. Made Petitioner herein is:

   **WILLARD MASTERS III**, an adult resident of the State of Louisiana who resides in Jefferson Parish.

2. Made Defendants herein are:

   A. **PREMISE/EMPLOYER/SHIPYARD DEFENDANTS**

   1. **HUNTINGTON INGALLS, INCORPORATED** (f/k/a Northrup Grumman Shipbuilding, Inc., f/k/a Northrup Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.) This defendant is being sued for negligence.

   2. **UNION CARBIDE CORPORATION** A New York corporation with a principal business establishment in Louisiana. This defendant is being sued as a seller/supplier /contractor/premise defendant.

   3. **CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC.** (f/k/a and s/s/i I.C. Electric Supply) This defendant is being sued for negligence/employer/strict liability.

   4. **ST. JOSEPH THE WORKER ROMAN CATHOLIC CHURCH, MARRERO, LOUISIANA** This defendant is being sued for negligence/premise/strict liability.

   B. **SUPPLIER/MANUFACTURER/SELLER/CONTRACTOR DEFENDANTS**

   5. **GENUINE PARTS COMPANY** (individually and d/b/a "NAPA" branded products) This defendant is being sued as a seller/supplier/product/manufacturer defendant.

   6. **CEMEX MATERIAL, LLC** (f/k/a Rinker Materials, LLC, f/k/a CSR America) This defendant is being sued as a seller/supplier/product/manufacturer defendant.



1

7. **UNIROYAL, INC.**
   This defendant is being sued as seller/supplier/product/manufacturer.

8. **BURMASTER LAND AND DEVELOPMENT COMPANY, LLC (f/k/a Burmaster Land & Development Company, Inc.)**
   This defendant is being sued as a seller/supplier/contractor defendant.

9. **LEVEL 3 HOLDINGS, INC. (f/k/a Whitney Holding Corp., f/k/a Peter Kiewit Sons' Co.)**
   This defendant is being sued as a seller/supplier/contractor defendant.

10. **PNEUMO-ABEX CORPORATION**
    This defendant is being sued as seller/supplier/product/manufacturer.

11. **MORSE TEC, LLC, f/k/a Borgwarner Morse Tec LLC, and successor by merger to Borg-Warner Corporation**
    This defendant is being sued as seller/supplier/product/manufacturer.

12. **TAYLOR-SEIDENBACH, INC.**
    A corporation duly organized, created, and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in New Orleans, Louisiana.
    This defendant is being sued as a seller/supplier/contractor defendant.

13. **ASBESTOS CORPORATION, LTD.**
    This defendant is being sued as a seller/supplier/product/manufacturer defendant.

14. **SCHNEIDER ELECTRIC USA, INC. f/k/a Square D Company**
    This defendant is being sued as a seller/supplier/product/manufacturer defendant.

15. **JOHNSON CONTROLS, INC.**
    This defendant is being sued as a seller/supplier/product/manufacturer defendant.

16. **CSR, LTD.**
    This defendant is being sued as a seller/supplier/product/manufacturer/ contractor defendant.

17. **SENTRY INSURANCE COMPANY**
    **(as insurer for Reilly Benton)**
    This defendant is being sued as a seller/supplier/product/manufacturer defendant.

18. **ZURICH INSURANCE COMPANY**
    **(as insurer for North American Asbestos Corporation and Cape Asbestos Company)**
    This defendant is being sued as a seller/supplier/product/manufacturer defendant.

3. Willard Masters III was diagnosed with asbestos-related mesothelioma on or about July 6, 2020, which was caused by and a consequence of his exposure to asbestos as set forth herein. As a direct and proximate result of the delictual conduct of the Defendants, Plaintiff Willard Masters III has recently contracted asbestos-related mesothelioma and has suffered physically, financially, mentally, and emotionally.

4. The Defendant Taylor-Seidenbach, Inc., is a domestic corporation with its registered offices located in Orleans Parish. Plaintiff was exposed to asbestos and/or asbestos-containing products that were distributed and installed by the above-referenced Defendants at the work sites identified in Paragraph 2. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

5. Plaintiff, Willard Masters III, was exposed to asbestos during his work for Graybar Electric in New Orleans, LA at 1116 Magnolia Street from 1970-1976 as an operations manager, so venue is proper in Orleans Parish pursuant to La. Code of Civil Procedure Article 74 as the parish where the wrongful conduct occurred and where the damages were sustained.

6. Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Articles 42 and 74 because Defendant Taylor-Seidenbach is a domestic corporation licensed to do business in this State and has designated its primary business office and/or primary place of business in Louisiana as Orleans Parish, and because the exposure of Plaintiff originated in Orleans Parish.

7. Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries to Plaintiff.

8. The actions of each of the Defendants are a proximate cause of Plaintiff's injuries. As a result, all Defendants are jointly and solidarily liable for the damages caused by their combined actions.

9. Each of the Defendants contributed with Taylor-Seidenbach, Inc. to cause Plaintiff's exposures as stated herein. Each of the Defendants is liable in solido to the Plaintiff. Thus, venue proper for Taylor-Seidenbach, Inc. is proper for all Defendants pursuant to Louisiana Code of Civil Procedure Articles 42 and 73.

10. The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

11. Plaintiff specifically disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in, or on the grounds of, a federal enclave. Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any conduct, action, acts or omissions of any and all federal officers, or committed at the direction of an officer of the United States Government.

12. Plaintiff Willard Masters III was exposed to injurious levels of asbestos through his

3

employment at Avondale Shipyards as a tack welder in the lay down yard in 1968. Mr. Masters worked on land and not onboard any vessels. Mr. Masters was also exposed to injurious levels of asbestos by his father's, Willard Masters II, work at Celotex as an electrician from 1945 to the early 1970's. While employed at Celotex, Willard Masters II used, handled, and/or was in the vicinity of others using and/or handling asbestos and/or asbestos-containing products, and dangerously high levels of asbestos fibers escaped into the ambient air of the work place, resulting in Mr. Masters II's exposure to such asbestos and/or asbestos-containing products that subsequently exposed Petitioner to same. Further, Willard Masters III was exposed to asbestos from his work for I.C. Electric Supply (n/k/a CED- Consolidated Electric Supply) between 1968-1970 when he delivered materials to Union Carbide in Taft, Louisiana from 1968-1970. As a worker for I.C. Electric Supply, Mr. Masters III worked in the vicinity of Peter Kiewit employees manipulating asbestos products at Union Carbide in Taft, Louisiana. In addition, while working for IC Electric he personally handled and was exposed to various asbestos containing products. From 1970-1978, Mr. Masters III worked for Graybar Electric at 1116 Magnolia Street, New Orleans, LA where he handled asbestos material, including but not limited to square d products, rockbestos products, and Okonite Cable. From 1965 through the 1980's, Mr. Masters III worked as a shade tree mechanic and performed brake jobs, changed clutches and gaskets, and performed other general mechanic work for his own vehicles and his friends' vehicles, resulting in his exposure to injurious levels of asbestos. Mr. Masters III purchased these asbestos containing products at NAPA, Jake's Speed Shop and Tony's Auto Parts in the greater New Orleans metro area. Mr. Masters III grew up on 526 Michael Street (now 560 Michael Street) in Marrero, Louisiana. This address had a driveway that contained asbestos, commonly referred to as a scrap driveway. This asbestos scrap material was provided by Burmaster, which obtained it from the Johns Manville facility in Marrero, Louisiana, to his family and installed in his driveway that he would regularly play on. This asbestos material from Johns Manville was supplied by Asbestos Corporation Limited, North American Asbestos Corporation, Cape Asbestos and CSR and their subsidiaries among others. Further, Mr. Masters III attended grade school and middle school at St. Joseph the Worker on Ames Blvd. in Marrero, Louisiana. St. Joseph the Worker's school grounds and playground contained hazardous amounts of asbestos to which Mr. Masters was exposed. Lastly, while growing up in Marrero, Louisiana, Mr. Masters III lived in close proximity to the Johns Manville plant, which polluted the neighboring community air with hazardous amounts of

asbestos. This asbestos was supplied to Johns Manville by Asbestos Corporation Limited, North American Asbestos Corporation, CSR, and their subsidiaries, among others, and exposed Mr. Masters III and other residents of Marrero from 1949-1975.

13. Petitioner Willard Masters III was exposed to the asbestos fibers through interaction with his father and his father's vehicle and clothing, which his father wore home from work and Mr. Masters III would assist with laundering.

14. In connection with the Petitioner's exposure to asbestos from his work at the sites and locations identified in Paragraphs 12, and his father's work at the sites and locations identified in Paragraph 12 from approximately 1945-1979, and through his personal contact with his father and the dust he breathed while assisting with the laundering of his father's work clothes, the Petitioner suffered exposure to asbestos and asbestos-containing products designed, manufactured, sold, supplied, used and/or maintained at the aforementioned sites by the Defendants.

15. Before and during Willard Masters III's exposure periods, each of the Defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, used, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities listed in Paragraph 12 from which the Plaintiff was exposed to asbestos-containing products, materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos".

16. When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

17. Each of the Defendants knew or should have known, through industry and medical studies the existence of which was unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning the Plaintiff and the general public about these dangers, the Defendants ignored or concealed such information, or condoned such concealment, in order to sell or use asbestos or asbestos-containing products and avoid litigation by those who were injured from asbestos inhalation.

18. As a direct and proximate result of inhalation or ingestion of or other exposure to asbestos as described above, Willard Masters III contracted asbestos-related mesothelioma. Mr. Masters

was diagnosed with asbestos-related mesothelioma on or about July 6, 2020. A cause of Petitioner's contraction of asbestos-related mesothelioma was his asbestos exposure.

19. Because of the latency period between exposure to asbestos and the onset of cancer, and because of the concealment by some Defendants of the causes and effects of exposure to asbestos, the Plaintiff did not know nor could he have reasonably known that Plaintiff's injuries were caused by his asbestos exposure until recently, which occurred less than one year prior to the filing of the instant Petition for Damages. Further, Plaintiff only recently discovered his injuries, not more than one year preceding the filing of this Original Petition for Damages.

20. In connection with his and his father's work at the aforementioned job sites, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge nor reason to believe that asbestos was dangerous.

## GENERAL NEGLIGENCE ALLEGATIONS- ALL DEFENDANTS

21. On information and belief, all of the Defendants identified in paragraph 2 above were responsible to provide Plaintiff and Plaintiff's father with warnings concerning hazardous conditions at their sites and/or their use of hazardous materials, and generally to provide Plaintiff and his father with safe premises in order to protect the life, health, safety, and welfare of Plaintiff, and had the following responsibilities:

A. To inspect, approve, and supervise the various premises for hazards and vices that may present a hazard to Plaintiff;

B. To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C. To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as Plaintiff;

D. To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E. To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F. To keep abreast of state-of-the-art-knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

6

G. To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was unnecessary, in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment in which Plaintiff or his father was required to be present;

H. To make certain that Plaintiff and Plaintiff's father, was provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I. To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healy Act and Occupational Safety and Health Act.

22. Not only did Defendants have the duties and responsibilities set forth in the foregoing paragraph, but they did actually undertake on an operational basis to perform said duties and fulfill said responsibilities, and they negligently failed to carry out those undertakings and assumed duties in the manner asserted in the paragraph below, and on information and belief, Defendants knew of the dust laden atmosphere in which Plaintiff and Plaintiff's father was required to enter, and work, which was damaging and dangerous to Plaintiff and any other family member coming into contact with Willard Masters II's work clothing, and each Defendant knew or should have known of the dangers to Plaintiff's health posed by his father's work in an atmosphere polluted with asbestos dust without proper protection or warnings. Plaintiff alleges that these Defendants knew or should have known that the mesothelioma sustained by Plaintiff could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

23. On information and belief, Defendants negligently failed in the performance of their responsibilities and/or actual undertakings to provide Plaintiff and his father, with safe premises and operations in the following particulars:

A. Failing to properly ventilate the area in which Plaintiff and Plaintiff's father, were required to enter in connection with their work;

B. Failing to warn or provide proper safety appliances, including but not limited to respirators, air-fed hoods, etc. for Plaintiff and Plaintiff's father's use;

C. Failure to institute safety procedures and plans for the adequate protection of Plaintiff and Plaintiff's father;

7

D. Failing to warn Plaintiff and Plaintiff's father of the dangers posed by the polluted atmosphere in which they were required to work including, but not limited to the risk of asbestosis, pleural disease, lung cancer, mesothelioma, other cancers, and the carcinogenic effect of the risk of mesothelioma caused by asbestos exposure to persons from the handling and use of asbestos;

E. Failing to enforce applicable safety rules after such rules were actually adopted;

F. Failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, the occupational exposure to asbestos;

G. Failing to properly supervise operations;

H. Failing to provide proper and safe laundry services to workers;

I. Failing to prevent workers from taking asbestos dust home on their clothes;

J. Commencing and continuing operations which were under their control and supervision when they knew or should have known that such operations caused Plaintiff and his father, to be exposed to asbestos dust, without protections;

K. Failing to abide by applicable state and federal regulations regulating the premises' exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor, pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

L. Failing to measure the levels of asbestos dust in the premises' working environment.

24. The negligence of these Defendants was a substantial factor and contributed in causing damages to Plaintiff.

### NEGLIGENCE AND STRICT LIABILITY AGAINST MANUFACTURER/SELLER/SUPPLIER/CONTRACTOR DEFENDANTS

25. The Defendants identified in Paragraph 2B above as manufacturers, sellers, contractors and/or suppliers of asbestos products were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products, or are professional vendors of asbestos or asbestos-containing products, or as a contractor, which were expected to and did reach the Plaintiff's and Plaintiff's father's job sites causing Plaintiff to be exposed to them.

26. The products manufactured, distributed, supplied, sold and/or used by these Defendants were defective, and unreasonably dangerous per se to Petitioner and his father, who was an

8

intended and foreseeable user and bystander that was exposed to these products. These defects include, without limitation, the following:

    A.    manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

    B.    manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be foreseeably exposed to them such as Willard Masters III;

    C.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

    D.    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

    E.    failure to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

    F.    failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users and bystanders;

    G.    failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users and bystanders;

    H.    failure to prevent Petitioner's father from taking dusty work clothes home;

    I.    failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

    J.    defects in the composition and construction of these products;

    K.    failure to recall these products manufactured, sold and supplied;

    L.    failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

    M.    over-warranting the safety of these products;

27.    Defendants are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code, that have caused harm to Plaintiff.

28. The defective conditions of Defendants' products and fault, as noted above, are a cause of Plaintiff's injuries and damages complained of herein.

29. Plaintiff also alleges that each and every one of the foregoing Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiff's injuries.

### NEGLIGENCE ACTION AGAINST SHIPYARD DEFENDANT, HUNTINGTON INGALLS INCORPORATED (f/k/a Northrup Grumman Shipbuilding, Inc., f/k/a Northrup Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.).

30. Plaintiff makes no claim of strict liability against Avondale. No allegation in this petition shall be interpreted as pleading a claim of strict liability concerning Avondale.

31. Plaintiff is in no way asserting strict liability or premise liability claims or causes of action against Defendant Huntington Ingalls Incorporated. Plaintiff's causes of action are based upon the acts and omissions of Defendant or those for whom the Defendants are responsible, and are specifically not based upon any act committed at the direction of the United States Government or any of its officers or agents.

32. Avondale is responsible for the conduct of those individuals and companies working on their premises with asbestos products, which created an unsafe work environment, which resulted in exposure to asbestos to Plaintiff and which resulted in the injury of Plaintiff for which Defendants are liable under Louisiana law.

33. Avondale failed to provide Plaintiff a safe place in which to work free from the hazards of asbestos, which failure was a proximate cause of Plaintiff's injuries. Plaintiff's causes of action are based upon the acts and omissions of Defendants or those for whom the Defendants are responsible, and are specifically not based upon any act committed at the direction of the United States Government.

34. Avondale negligently, recklessly, willfully and/or because of gross and wanton negligence, or fault, failed to properly discharge its duties to Plaintiff in the following particulars: (a) failure to provide Plaintiff with a safe place to work; (b) failure to provide Plaintiff with adequate engineering or industrial hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air,

medical monitoring, air monitoring, and procedures to prevent the transportation of asbestos fibers home; and (c) failure to inform or warn Plaintiff of the hazards of asbestos exposure.

35. These specific acts of fault were a substantial contributing factor of Plaintiff's injuries.

36. Plaintiff's was exposed to asbestos-containing products while employed at and/or on the premises of Avondale in 1968 in the lay down yard only and not upon any ships or vessels, exclusively upon land. Plaintiff was exposed to fibers from his work for Avondale. Plaintiff's exposure to asbestos products occurred without fault on his part. Plaintiff alleges that Avondale is liable for Plaintiff's injuries, as alleged, arising out of the negligent conduct of Avondale as detailed herein, and, in failing to provide Plaintiff a safe place in which to work free from the dangers of respirable asbestos-containing dust.

37. As a direct and proximate contributing result of inhalation or ingestion of or other exposure to asbestos from Avondale, Plaintiff received injuries, both physically and mentally, including, without limitation, all of the ramifications of mesothelioma.

38. Avondale negligently, recklessly, willfully and/or because of gross and wanton negligence or fault, failed to properly discharge their duties to the Plaintiff in the following ways: (a) failed to provide the Plaintiff with a safe work environment; (b) failed to provide the Plaintiff with safety equipment; (c) failed to provide the Plaintiff with correct, adequate, or proper safety equipment; (d) recklessly and negligently failed to disclose, warn or reveal critical medical and safety information to Plaintiff regarding asbestos hazards in general and with regard to those specific hazards at the work site; (e) recklessly concealed from Plaintiff and negligently omitted to reveal critical medical and safety information regarding the safety and health risks associated with the asbestos and asbestos-containing products at the work sites; (f) failed to timely remove asbestos hazards from the workplace; (g) failed to properly supervise or monitor the work areas for compliance with safety regulations; (h) failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air; and (i) failed to provide the necessary facilities, practices and procedures that would lessen or eliminate the transfer of asbestos from the workplace to the home on the clothing which ultimately exposed Plaintiff.

39. The above-described negligence, fault, and willful misconduct of Avondale was a proximate cause of Plaintiff's injuries.

40. At all times throughout Plaintiff's exposure to asbestos present and used within Avondale's facilities, Avondale knew that asbestos posed substantial health risks to those exposed to it, knew

11

that there were specific engineering and industrial hygiene procedures which should have been employed to reduce exposures, and knew that those exposed to asbestos on the job could bring home asbestos on their clothes and thereby injuriously expose those in the household, yet Avondale chose not to inform Plaintiff of this information or implement any meaningful safety precautions, all of which was a substantial contributing cause of Plaintiff's injuries.

41. Avondale is liable to Plaintiff for its failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with exposure to asbestos. Avondale, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees. Avondale knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm. Avondale's failure to protect Plaintiff from known and/or foreseeable dangers constitutes negligence. Said negligence was a proximate cause of Plaintiff's asbestos-related injuries and damages.

### STRICT LIABILITY AND NEGLIGENCE OF PREMISE OWNER

42. Union Carbide, St. Joseph the Worker, IC Electric, and, each of which are identified as a premise defendant above, (hereinafter, collectively referred to herein as "Premise Defendant") is liable for Plaintiff's injuries caused by its fault, in the form of strict liability and/or negligence as detailed herein, and in failing to provide Plaintiff with a safe place to work free from the dangers of respirable asbestos-containing dust, which Plaintiff was subsequently exposed to.

43. The Premise Defendant is liable to the Plaintiff for the damages described in this Petition for the following acts of negligence while Plaintiff was working within its work site:

    A.    Failing to provide respiratory protection to the Plaintiff;

    B.    Failing to provide safety equipment to Plaintiff;

    C.    Failing to provide general ventilation in Plaintiff's work areas;

    D.    Failing to provide local exhaust in Plaintiff's work areas;

    E.    Failing to provide air free from airborne asbestos fibers in Plaintiff's areas;

    F.    Failing to provide Plaintiff with proper medical monitoring;

    G.    Failing to educate Plaintiff of the hazards of asbestos;

    H.    Failing to post warning or caution signs regarding the hazards of asbestos;

    I.    Failing to implement wet methods to control the level of airborne asbestos fibers in Plaintiff's work areas;

  J. Failing to implement the use of asbestos-free materials; and

  K. Inducing Plaintiff to work in areas polluted with respirable asbestos fibers.

44. As a direct result of the aforementioned acts, Plaintiff inhaled and otherwise ingested asbestos fibers from the asbestos and asbestos-containing products present within St. Joseph the Worker, IC Electric, Graybar, and Union Carbide during his work, and as a direct result, Plaintiff contracted the asbestos-related mesothelioma complained of herein.

45. During the course of the Plaintiff's work and schooling, Plaintiff was exposed to asbestos and/or asbestos containing products, which were in the care, control and custody of these Defendants. Because of the extreme hazard it poses to humans, asbestos constitutes a defect or vice in the products to which Plaintiff was exposed, which defect or vice was a cause in fact of Plaintiff's injuries described herein. Accordingly, these Defendants are strictly liable to Plaintiff in accordance with Louisiana Civil Code articles 2315 and 2317.

46. During the course of the Plaintiff's work and schooling, Plaintiff was exposed to asbestos released from these premises, which release was a cause in fact of Plaintiff's injuries described herein. Accordingly, The Premise Defendant is strictly liable to Plaintiff in accordance with, but not limited to, Louisiana Civil Code article 2315, former Louisiana Civil Code articles 660 and 669, and *Langlois v. Allied Chemical Corp*, 249 So.2d 133 (La. 1971).

47. The Premise Defendant knew or should have known that asbestos posed a hazard to humans and that there were specific engineering and industrial hygiene controls that could help reduce the levels of airborne asbestos fibers, and nonetheless failed or suppressed, through silence, neglect or inaction, the truth regarding asbestos to Plaintiff so as to obtain an unjust advantage for themselves over and at the expense of Plaintiff or to cause loss or inconvenience to Plaintiff. This action or inaction by the Premise Defendant was a direct and proximate cause of the damages described herein.

## INSURANCE ALLEGATIONS

**48.** Plaintiff avers that **SENTRY INSURANCE COMPANY** issued policies of insurance to Reilly Benton, that provided coverage for the causes of action asserted by Plaintiff against **Sentry Insurance Company** as insurer for Reilly Benton. As such, **Sentry Insurance Company** is liable for the damages alleged in the Original Petition and any supplement against Orleans Insulation and Sales, Inc. and their executive officers individually, jointly and *in solido*.

49. Plaintiff avers that **Zurich Insurance Company** issued policies of insurance to North American Asbestos Corporation and Cape Asbestos Company that provided coverage for the causes of action asserted by plaintiff. As such, Zurich Insurance Company is liable for the damages alleged in the Original Petition and any supplement against North American Asbestos Corporation and Cape Asbestos Company, individually, jointly and *in solido*.

## DAMAGES

50. The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related mesothelioma of the Petitioner, and of the following general and special damages including:

   A. The conscious physical pain and suffering and mental anguish sustained by Petitioner (past, present and future);

   B. The disfigurement suffered by Petitioner;

   C. The physical impairment suffered by Petitioner (past, present and future);

   D. Reasonable and necessary medical expenses incurred by Petitioner;

   E. All past, present and future lost earnings and loss of earning capacity;

   F. Loss of quality of life;

   G. All forms of relief or categories of damages allowed by Louisiana law for survival claims, against parties the law allows such claims to be alleged against, with interest from the date of injury until paid, plus costs of these proceedings.

51. Plaintiff demands a trial by jury on all issues.

**WHEREFORE,** Petitioner demands judgment against the Defendants, and each of them, jointly, severally and/or in solido for all damages, for their costs expended herein, for judicial interest from the date of judicial demand, and for such other and further relief, both at law and in equity, to which Petitioner may show himself justly entitled.

Respectfully submitted,
**BOLING LAW FIRM, LLC**

Jeremiah Boling (Bar No. 34249)
1100 Poydras Street, Suite 2900
New Orleans, LA 70163
Telephone: (504) 615-6309
Fax: (504) 369-3421
jboling@bolingfirm.com
**ATTORNEYS FOR PETITIONERS**

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFF'S PETITION FOR DAMAGES:**

**HUNTINGTON INGALLS INCORPORATED**
(f/k/a Northrup Grumman Shipbuilding, Inc., f/k/a Northrup Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.)
Through its agent for service:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**TAYLOR-SEIDENBACH, INC.**
Through its agent for service:
Robert I. Shepard or Hal Shepard
731 S. Scott Street
New Orleans, LA 70119

**UNION CARBIDE CORPORATION**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**ASBESTOS CORPORATION LTD.**                          **LONG ARM SERVICE**
For Long Arm Service of Process Via The Hague:
840 Boul, Ouellet CP9
Thetford Mines, PQ G6G 5S1

**ZURICH INSURANCE COMPANY**
(as insurer of North American Asbestos Corporation and Cape Asbestos Company)
(For service of process via the Direct Action Statute, L.R.S. 22:655)
Through the Louisiana Secretary of State:
8585 Archives Avenue
Baton Rouge, LA 70809

**Level 3 Holdings, Inc.**                              **LONG ARM SERVICE**
Pursuant to the Louisiana Long Arm Statute:
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

**UNIROYAL INC.**                                       **LONG ARM SERVICE**
Pursuant to the Louisiana Long Arm Statute:
70 Great Hill Road
Naugatuck, CT 06770

**CONSOLIDATED ELECTRICAL DISTIBUTORS, INC.**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**ST. JOSEPH THE WORKER ROMAN CATHOLIC CHURCH, MARRERO, LOUISISIANA**
Through its agent for service:
Jeffrey J. Entwisle
7887 Walmsley Avenue
New Orleans, LA 70125

15

**GENUINE PARTS COMPANY**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**CEMEX MATERIALS, LLC**                    **LONG ARM SERVICE**
Through its agent for service:
Corporate Creations Network, Inc.
801 US Highway 1
North Palm Beach, FL 33408

**BURMASTER LAND & DEVELOPMENT, LLC**
Through its agent for service:
AJ Burmaster
7033 Edgewater Dr.
Mandeville, LA 70471

**PNEUMO ABEX CORPORATION**                 **LONG ARM SERVICE**
**Via the Louisiana Long Arm Statute:**
Through its registered agent:
2711 Centerville Rd., Ste. 400
Wilmington, DE 19808

**SENTRY INSURANCE COMPANY**
(as insurer of Reilly Benton)
(For service of process via the Direct Action Statute, L.R.S. 22:655)
Through the Louisiana Secretary of State:
8585 Archives Avenue
Baton Rouge, LA 70809

**JOHNSON CONTROLS, INC.**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**SCHNEIDER ELECTRIC USA, INC.**
Through its agent for service:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**BORGWARNER MORSE TEC LLC**                **LONG ARM SERVICE**
Via the Louisiana Long arm Statute
Through its registered agent:
The Corporation Company
40600 Ann Arbor Road E, Ste. 201
Plymouth, MI 48170

**PLEASE HOLD SERVICE ON THE FOLLOWING DEFENDANT:**

**CSR, LTD.**